UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KAWANZA SOUTH et al.                                                    PLAINTIFFS

V.                                           CIVIL ACTION NO. 3:15CV342-DPJ-FKB

JOSEPH AUSTIN, M.D., et al.                                            DEFENDANTS

ORDER

This wrongful-death, medical-malpractice case is before the Court on Defendants'

Motion for Partial Summary Judgment [69] and Motion to Strike [76], in which they seek to

exclude supplemental opinions from Plaintiffs' expert Dr. Keith Millikan.  The issues have been

fully briefed.  For reasons that follow, the Court finds that portions of Dr. Millikan's opinions

should be stricken as delinquent but that partial summary judgment should be denied without

prejudice to Defendants' right to raise their arguments at trial.

I.        Background

On March 7, 2013, Sheila South was admitted to the River Region Medical Center for a

transvaginal hysterectomy and left salpingo-oophorectomy.  Defendant Dr. Joseph Austin, M.D.,

performed the procedures.  According to the Complaint, Ms. South's condition deteriorated after

the surgery, and she was transferred to ICU before passing away on March 20, 2013.  *See*

Compl. [1] at 2.

On May 5, 2015, Ms. South's children Kawanza and Leonard South sued Defendants

Austin, Vicksburg Women's Care, Inc., and five John and Jane Does in this Court claiming

negligence and breach of the standard of care.  *Id.* at 3.  They correctly premise jurisdiction on

diversity because they are both Louisiana residents while Defendants are residents of

Mississippi.  *See Bush v. Carpenter Bros.*, 447 F.2d 707, 711 (5th Cir. 1971) (holding that diversity is based on the residence of personal representatives in wrongful-death case).

The two pending motions are somewhat interrelated.  On September 6, 2016, Defendants moved for partial summary judgment, contending that Dr. Austin cannot be held vicariously liable for any alleged acts of negligence occurring after March 9, 2013, the date that Dr. Austin began a vacation and other physicians assumed responsibility for Ms. South's care.  In response, Plaintiffs submitted a supplemental affidavit from their expert, Dr. Keith Millikan, which offered new opinions regarding Dr. Austin's liability and causation.  Defendants' subsequent motion to strike seeks to exclude these new opinions.  The Court will first consider the motion to strike.

II.     Motion to Strike

"The admission or exclusion of expert testimony is a matter left to the discretion of the trial court . . . ."  *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 180 (5th Cir. 1995).  In this case, the parties dispute whether Plaintiffs offered delinquent new opinions or merely supplemented their expert's original opinions pursuant to Federal Rule of Civil Procedure 26(a)(2)(E).

A.  Standards

Rule 26(a)(2)(B) requires, *inter alia*, that expert reports contain "a complete statement of all opinions the witness will express and the basis and reasons for them."  Thus, "[e]xpert reports under Rule 26 must be 'detailed and complete,' not 'sketchy and vague.'"  *Harmon v. Ga. Gulf Lake Charles L.L.C.*, 476 F. App'x 31, 36 (5th Cir. 2012) (citing Rule 26 advisory committee's notes and *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996)).

2

Nevertheless, Rule 26(e)(1)(A) allows a party to supplement when it "learns that in some material respect the disclosure or response is incomplete or incorrect."  "The purpose of rebuttal and supplementary disclosures is just that—to rebut and to supplement.  These disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information."  *Sierra Club*, 73 F.3d at 571.  And the rule is not a basis to make "material additions" to an initial report.  *Harmon*, 476 F. App'x at 38, *cited with approval in Cole v. Hunter*, 68 F. Supp. 3d 628, 639 (N.D. Tex. 2014) (holding that "[s]upplemental opinions must not include material changes or corrections to the expert opinions").

As such, courts frequently disallow purported "supplements" offered to defeat summary judgment when the opinions could have been offered at an earlier time.  *See Cutler v. Louisville Ladder, Inc*., No. 4:10-4684, 2012 WL 2994271, at *5 n.43 (S.D. Tex. July 20, 2012) (Atlas, J.) (rejecting "supplementation" where party failed to show bases of new opinions were unavailable before disclosure deadline); *Buxton v. Lil' Drug Store Prods., Inc.*, No. 2:02CV178KS-MTP, 2007 WL 2254492, at *5–6 (S.D. Miss. Aug. 1, 2007), *aff'd*, 294 F. App'x 92 (5th Cir. 2008) (citing *Cleave v. Renal Care Grp., Inc.*, No. 2:04CV161-P-A, 2005 WL 1629750, at * 1 (N.D. Miss. July 11, 2005) (excluding supplemental expert affidavit produced in response to summary-judgment motion where plaintiff failed to identify new information which would prompt new opinions)).

B.  Analysis

The present motion springs from a somewhat unusual procedural posture.  Normally, the plaintiff designates experts before the defendant.  Supplements sometimes follow to address new issues raised in the defendant's reports.  But here, Plaintiffs missed their deadline to disclose, so Defendants ended up going first.  Plaintiffs then sought and received leave to designate out of

time, which they did.  As a result, Plaintiffs had full knowledge of Defendants' theories before

they were forced to disclose theirs.  Yet their expert, Dr. Millikan, did not address many of those

theories in his initial report, waiting instead to submit a new affidavit after Defendants moved for

summary judgment.  As discussed below, this procedural history impacts whether the opinions in

the affidavit are true supplements.[1]

Turning then to the specific opinions now in dispute, the parties compare Dr. Millikan's

new affidavit to his original report to determine whether the information reflects a true

supplement.  Both parties compare the same twelve opinions from the affidavit with statements

from the original report.  The Court will follow the parties' approach, providing those opinions

followed by the Plaintiffs' descriptions of the original opinions they sought to supplement.

Opinion #1

- Opinion in New Affidavit:  "Sheila South's increased blood pressure and
  hematocrit on March 8, 2013, was attributable to the 4 units of blood transfused
  and was just a temporary and pseudo increase."  Defs.' Mem. [77] at 4.

- Plaintiffs' Description of Original Report:  "Ms. South had to be transfused with
  additional units of blood on March 7, 12, 13, and 20."  Pls.' Mem. [83] at 6.

- Analysis:  Defendants' expert Dr. Joseph Hudgens stated in his report that on
  March 8, 2013, Ms. South's "blood pressures were stable."  Hudgens' Report [84-
  2] at 2.  Yet Dr. Millikan's original report made no reference to a "pseudo
  increase" caused by a transfusion.  Defs.' Reply [84] at 6.  He did, however, offer
  a chronology stating that the blood pressure and hematocrit readings on March 8
  did not hold.  For example, he notes that on March 7, "Ms. South was markedly
  hypotensive."  Millikan Report [78-1] at 2.  On March 9, a consulting doctor
  again recorded hypotension.  *Id*. at 3; *see also id.* at 4 (noting continued
  hypotension).  He also notes "persistent drops in hematocrit levels" and ongoing
  blood loss.  *Id*. at 3; *see also id.* at 4.  It appears to be in that context that Dr.

_____

[1]Technically speaking, the supplemental affidavit was itself delinquent.  *See* Fed. R. Civ. P.
26(e)(2) (allowing courts to set alternative deadlines for supplements); L.U. Civ. R. 26(a)(5)
(requiring Rule 26(e)(1)(A) supplements no "later than the discovery deadline established by the
case management order").

Millikan mentioned the transfusions on March 7, 12, 13, and 20.  *Id.* at 3.  Dr. Millikan will be allowed to discuss this history.  He did not, however, attribute the March 8 readings to the transfusions, nor mention "pseudo increases," despite having knowledge of Dr. Hudgens' opinions.  Those opinions are new.

Opinion #2

- Opinion in New Affidavit:  "A physician who operates on a patient has a non-delegable duty and is responsible for the post-operative management of the patient that he/she operated on."  Defs.' Mem. [77] at 4.

- Plaintiffs' Description of Original Report:  "[T]he standard of care requires a reasonably prudent and minimally competent surgeon to promptly detect and manage post surgical complications."  Pls.' Mem. [83] at 6.

- Analysis:  Whether Dr. Austin breached duties related to his upcoming vacation strikes at the heart of the present motion.  According to Defendants' expert, Ms. South's condition on March 8, 2013, "was sufficiently stable for Dr. Austin to leave town for a planned vacation."  Hudgens' Report [84-2] at 2.  As noted above, these opinions were disclosed before Dr. Millikan offered his first report, yet he took no issue with this crucial opinion and said nothing about non-delegable duties.  It was not until after Defendants moved for summary judgment that Dr. Millikan offered his opinion regarding non-delegable duties.  Dr. Millikan could have—and should have—initially provided "detailed and complete" opinions regarding Dr. Austin's duties.  *See Harmon*, 476 F. App'x at 36.  The opinion regarding non-delegable duties is not a supplement; it is a new opinion.

Opinion #3

- Opinion in New Affidavit:  "If the physician leaves to go out of town, the physician needs to undertake necessary medical interventions, make sure that the post-operative complications have resolved[,] and inform the patient and the physician assuming responsibility about the patient's post-operative complications, current status[,] and the need for any further interventions."  Defs.' Mem. [77] at 4.

- Plaintiffs' Description of Original Report:  "Dr. Austin breached the standard of care by failing to properly detect, diagnose and manage post-surgical complications despite Ms. South's low blood pressure readings, decreased urine output, and clinical presentation post-surgery."  Pls.' Mem. [83] at 7.

- Analysis:  Again, Defendants disclosed their expert opinions regarding Dr. Austin's vacation before Dr. Millikan offered his first report, yet he said nothing

about the duties that arise when a doctor leaves town.  Instead, Dr. Millikan expressed generic opinions regarding the standard of postsurgical care and only later offered this specific opinion.  The two are not the same, and this is not a proper supplement.

Opinion #4

- Opinion in New Affidavit:  "The failure by Dr. Austin to provide such immediate diagnostic and surgical interventions prior to leaving to go on vacation was a breach of the standard of care and proximately caused and contributed to the post-surgical complications and subsequent death of Ms. Sheila South."  Defs.' Mem. [77] at 4.

- Plaintiffs' Description of Original Report:  "[T]he standard of care requires that a CT scan should be performed emergently to diagnose and determine the cause of the hemorrhage in a patient who is markedly hypotensive and showing signs of a post-operative blood loss; and that the standard of care requires that if a bleed is found the surgeon should perform timely exploratory surgery, clean the bleed and control the hemorrhage."  Pls.' Mem. [83] at 7.

- Analysis:  Defendants take issue with the statement "prior to leaving town."  For the reasons stated above, this phrase reflects a new opinion.  But to be clear, Dr. Millikan says enough in his original report to put Defendants on notice of his opinion that Dr. Austin should have taken certain actions during the time before he left.  Thus, he may offer the opinions he previously disclosed regarding alleged missteps while Dr. Austin was still in town.

Opinion #5

- Opinion in New Affidavit:  "Emergency surgery on March 12 would have been too late to save the patient."  Defs.' Mem. [77] at 4.

- Plaintiffs' Description of Original Report:  "*The initial report did not opine that any interventions on March 12, 2013, would have saved the patient.*  Dr. Millikan's Supplemental Affidavit stated that while the failure on March 12, 2013, was a breach of the standard of care, based on a reasonable degree of medical probability, by the time Dr. Austin left to [go] on vacation, the acute post operative blood loss suffered by Ms. South had already started a cascade of medical events; and that any surgical intervention after this time would probably have not saved Ms. South'[s] life and/or the chances of surgical intervention saving her life were greatly diminished."  Pls.' Mem. [83] at 8 (emphasis added).

6

- <u>Analysis</u>:  Plaintiffs' description of Dr. Millikan's initial report misses the mark. Notably, he never stated in his report that death was inevitable by March 12, 2013.  He stated instead that based on the March 12 CT scan, Defendants "missed a second opportunity to control the hemorrhage and prevent further deterioration of the patient's medical condition."  Millikan Report [78-1] at 4.  The new opinion rejects the original, offering a causation theory Dr. Millikan never previously expressed in order to avoid Defendants' summary-judgment arguments.  This is not a proper supplement.

Opinion #6

- <u>Opinion in New Affidavit</u>:  "The vaginal hysterectomy performed by Dr. Austin was more risky and prone to complications than an abdominal hysterectomy would have been."  Defs.' Mem. [77] at 4.

- <u>Plaintiffs' Description of Original Report</u>:  "Dr. Millikan's initial report notes that Dr. Austin performed a transvaginal hysterectomy. Dr. Millikan's initial report opined that it was a breach of the standard of care to not timely clean the bleed. Dr. Austin in his deposition testified that the blood on the CT scan was old blood."  Pls.' Mem. [83] at 8–9.

- <u>Analysis</u>:  The original report fails to mention abdominal hysterectomy, the risks associated with a transvaginal hysterectomy, or any suggestion that the choice of one over the other was in anyway relevant to the alleged breach of duty.  This therefore constitutes a new opinion.

Opinion #7

- <u>Opinion in New Affidavit</u>:  "Ms. South had overwhelming sepsis that contributed to her death."  Defs.' Mem. [77] at 5.

- <u>Plaintiffs' Description of Original Report</u>:  "Dr. Millikan's initial report states that he will testify based on his review of the medical records. Dr. Millikan notes in his initial report that Ms. South continued with sepsis and hypotension. Defendant Dr. Austin testified in his deposition that he noted that the patient had sepsis and that the fluid collection as shown on the CT could be the source of the sepsis (Exhibit 3 - Dr. Austin's deposition - Page 76, lines 24-25, Page 77, lines 3-10).  Dr. Austin further testified in his deposition about the cause of death and stated that sepsis was the overwhelming event. (Id. at Page 80, lines 24-25, Page 81, lines 1-11)."  Pls.' Mem. [83] at 9.

- <u>Analysis</u>: There is no dispute that Ms. South suffered from sepsis or that she had a host of other failures and eventually suffered a cardiac arrest.  As for the causal

relationship between the sepsis and death, Dr. Austin explained that the sepsis
related to the other medical issues, testifying that "obviously as the sepsis
worsened her clinical condition worsened and she subsequently died from that . . .
I feel like the sepsis was probably the overwhelming event."  Austin Dep. [82–3]
at 6–7 (CM/ECF pagination).  But the question is whether Dr. Millikan can offer
the same opinion.  As Defendants note, Dr. Millikan did not offer a precise causal
link between the sepsis and the death in his initial report.  But he does catalog Ms.
South's postoperative conditions, including sepsis, and states that Defendants
failed to timely detect and treat those problems ultimately leading to her death.
His new affidavit does not say that sepsis is the sole cause of death, stating instead
that it "contributed."  This is not inconsistent with the original report and appears
to be a valid supplement.

Opinion #8

- <u>Opinion in New Affidavit</u>:  "Blood in the pelvis makes a patient more susceptible
  to infection and resulting sepsis."  Defs.' Mem. [77] at 5.

- <u>Plaintiffs' Description of Original Report</u>:  "Dr. Millikan's initial report states that
  he will testify based on his review of the medical records.  Dr. Millikan notes in
  his initial report that Ms. South continued with sepsis and hypotension.
  Defendant Dr. Austin testified in his deposition that he noted that the patient had
  sepsis and that the fluid collection as shown on the CT could be the source of the
  sepsis (Exhibit 3 - Dr. Austin's deposition - Page 76, lines 24-25, Page 77, lines
  3-10).  Dr. Austin further testified in his deposition about the cause of death and
  stated that sepsis was the overwhelming event. (Id. at Page 80, lines 24–25, Page
  81, lines 1–11)."  Pls.' Mem. [83] at 9.

- <u>Analysis</u>:  While Dr. Millikan can certainly testify to the factual record regarding
  Ms. South's condition, he did not offer any opinions regarding the significance of
  blood in the pelvis.  His new conclusions drawn from the facts he previously
  reported constitute new opinions rather than valid supplements.

Opinion #9

- <u>Opinion in New Affidavit</u>:  "The post-operative blood that was pooling in Ms.
  South's pelvis was the source of the sepsis."  Defs.' Mem. [77] at 5.

- <u>Plaintiffs' Description of Original Report</u>: "Dr. Millikan's initial report states that
  he will testify based on his review of the medical records. Dr. Millikan notes in
  his initial report that Ms. South continued with sepsis and hypotension. Defendant
  Dr. Austin testified in his deposition that he noted that the patient had sepsis and
  that the fluid collection as shown on the CT could be the source of the sepsis

(Exhibit 3 - Dr. Austin's deposition - Page 76, lines 24–25, Page 77, lines 3–10). Dr. Austin further testified in his deposition about the cause of death and stated that sepsis was the overwhelming event. (Id. at Page 80, lines 24–25, Page 81, lines 1–11)."  Pls.' Mem. [83] at 9.

- <u>Analysis</u>:  While Dr. Millikan can certainly testify to the factual record regarding Ms. South's condition, he did not offer any opinions regarding the source of the sepsis or opinions that related the sepsis to the blood that pooled in Ms. South's pelvis.  His conclusions based on the facts he previously recorded constitute new opinions rather than valid supplements.

Opinion #10

- <u>Opinion in New Affidavit</u>:  "Defendants were negligent in not evacuating the leaked blood."  Defs.' Mem. [77] at 5.

- <u>Plaintiffs' Description of Original Report</u>:  "Dr. Millikan's initial report noted that the Defendants breached the standard of care by not performing a timely exploratory surgery, to <u>clean the bleed</u> and control the hemorrhage."  Pls.' Mem. [83] at 10.

- <u>Analysis</u>:  Defendants argue that "evacuating" the blood is not the same as "clean[ing] the bleed."  Defs.' Reply [84] at 11.  The Court lacks the knowledge necessary to tell whether Defendants are correct, and they fail to support the argument with evidence.  The motion is therefore denied as to this opinion.

Opinion #11

- <u>Opinion in New Affidavit</u>:  "The blood that had leaked post-operatively, resulting in a need for an immediate transfusion of four units of blood, was probably pooling in Ms. South's pelvis."  Defs.' Mem. [77] at 5.

- <u>Plaintiffs' Description of Original Report</u>:  "Dr. Millikan's initial report noted that the CT of the pelvis showed a moderate amount of fluid that was suggestive of an acute hemorrhage.  Dr. Austin testified in his deposition that the blood that was present on the CT scan was old blood from 5 days ago and that it had not been removed.  Dr. Austin admitted in his deposition that the blood in Ms. South's pelvis was old blood from the site of the surgery. (Exhibit 3 - Dr. Austin's deposition - Page 57-58, Page 87-88)."  Pls.' Mem. [83] at 10.

- <u>Analysis</u>:  Dr. Millikan previously noted the pooled blood, but he never attempted to explain its source.  This therefore constitutes a new opinion.

Opinion #12

- <u>Opinion in New Affidavit</u>:  "Blood in the pelvis makes a patient more susceptible to infection and resulting sepsis."  Defs.' Mem. [77] at 5.

- <u>Plaintiffs' Description of Original Report</u>:  "Dr. Millikan's initial report states that he will testify based on his review of the medical records. Dr. Millikan notes in his initial report that Ms. South continued with sepsis and hypotension. Defendant Dr. Austin testified in his deposition that he noted that the patient had sepsis and that the fluid collection as shown on the CT could be the source of the sepsis (Exhibit 3 - Dr. Austin's deposition - Page 76, lines 24-25, Page 77, lines 3-10). Dr. Austin further testified in his deposition about the cause of death and stated that sepsis was the overwhelming event. (Id. at Page 80, lines 24-25, Page 81, lines 1-11)."  Pls.' Mem. [83] at 9.

- <u>Analysis</u>:  Again, Dr. Millikan previously noted the pooled blood, but he never offered an expert opinion linking it to the likelihood of contracting sepsis.  This is a new opinion.

In sum, Dr. Millikan has offered new opinions that cannot be viewed as valid supplements.  While Dr. Millikan's initial report provides the medical history in detail, the actual opinions in his initial report are largely generic statements that Defendants breached various duties of care.  The disputed opinions from his affidavit are more specific and detailed, offering additional liability and causation theories to avoid summary judgment.  A party cannot circumvent the disclosure requirements in this way.  *Sierra Club,* 73 F.3d at 571.

But that holding does not end the analysis.  Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless."  Whether the non-compliance was substantially justified or harmless turns on the following four-factor test:  "(1) the importance of the excluded testimony, (2) the explanation of the party for its failure to comply with the court's order, (3) the potential prejudice that would arise from allowing the testimony, and (4) the availability of a continuance to cure such

prejudice." *E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d 113, 115 (5th Cir. 1993) (citation omitted).

The first factor relates to the importance of the testimony. Some of the more precise new opinions find support in other parts of the record, including Dr. Austin's own testimony. This diminishes the importance of those opinions. But other opinions are not found elsewhere, most notably those related to the duties Dr. Austin allegedly faced because he was leaving town for vacation and the causation opinions related to the March 12 CT scan. While these theories are important to aspects of Plaintiffs' claim, the exclusion of this evidence is not fatal to their overall case. Dr. Millikan still offers other opinions regarding alleged missteps that occurred while Dr. Austin was on call. Regardless, the importance of the opinions is outweighed by other factors.

The next question examines the explanation for the late disclosure. Here, Plaintiffs generally explain that "[t]he Affidavit from Dr. Keith W. Millikan was in response to issues raised by the Defendant[s] in their Motion for Partial Summary Judgment." Pls.' Resp. [83] at 1. Even assuming that could be a valid excuse in some cases, Defendants disclosed their theories before Dr. Millikan issued his first report.

Finally, the potential prejudice and the possibility of a continuance both weigh against allowing this late disclosure. Defendants first moved for summary judgment on February 18, 2016, approximately one month *after* Plaintiffs missed their original expert-disclosure deadline. *See* Defs.' Mot. [26]. Plaintiffs then sought and received leave to designate experts out of time. And as a result, the Court denied Defendants' first summary-judgment motion without prejudice finding that it was moot. *See* April 8, 2016 Text Order. Defendants then filed the present motion for partial summary judgment, contending that Dr. Millikan's expert report still failed to create a fact question as to events occurring after Dr. Austin began his vacation. This prompted

Dr. Millikan's disputed affidavit.  Were the Court to again allow a delinquent disclosure, it would likely reopen discovery as to the new opinions and again allow additional motion practice.  That would then require a third continuance of this trial.[2]  At some point, the discovery and disclosure phases of a case must come to an end, and a court must enforce its rules and procedures.  These factors weigh against allowing another extension.

In conclusion, the Court finds that many of the disputed opinions are new rather than valid supplements.  The Court likewise finds that the first, third, and fourth factors weigh heavily in favor of disallowing the delinquent disclosures.  The second factor—the significance of the evidence—weighs against Plaintiffs as to those opinions that find support elsewhere, but is otherwise outweighed as to the opinions for which there is no substitute.

In sum, the Court finds that Opinions #1, #4, #7, and #10 will be allowed to the extent stated above.  Opinions #2, #3, #5, #6, #8, #9, #11, and #12 should be stricken as delinquent.

III.    Motion for Partial Summary Judgment

A.  Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

---

[2] The Case was originally set for trial October 3, 2016, but was moved to October 17, 2016 due to a conflict for defense counsel.  See Motion [18] Sept. 28, 2015; Text-Only Order Oct. 7, 2015.  It was continued again May 4, 2016, when the Court granted Defendants' unopposed motion to continue to allow discovery.  *See* May 4, 2016 Text Order.  Though Plaintiffs do not appear to be at fault for either continuance, remedying the late supplement would further postpone a case that has already experienced delay.

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

      The party moving for summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The

nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing

that there is a genuine issue for trial.'" *Id.* at 324.  In reviewing the evidence, factual

controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have

submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th

Cir. 1994) (en banc) (per curiam).  When such contradictory facts exist, the court may "not make

credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000).

      B.  Analysis

      For the most part, the parties' respective briefs take little issue with each other.

Defendants contend that "they cannot be held liable for any negligence in the care and treatment

of Sheila South occurring *after* 6:30 a.m. on Saturday, March 9, 2013, when Dr. Austin was out

of town on vacation and other medical personnel were caring for the patient."  Defs.' Mem. [70]

at 1 (emphasis added).  For their part, Plaintiffs spend the vast majority of their time arguing that

Dr. Austin can be held personally liable for his acts or omissions *before* his March 9 departure

for vacation if they contributed to cause the ultimate injuries.  *See* Pls.' Mem. [73].  The latter

argument is not necessarily wrong, but it fails to address the meat of Defendants' motion.

      Regarding what happened after Dr. Austin departed, Mississippi law states that a doctor

has a non-delegable duty to care for and treat his or her patient.  *Partin v. N. Miss. Med. Ctr.,*

13

*Inc.*, 929 So. 2d 924, 936 (Miss. Ct. App. 2005).  But "this non-delegable duty should [not] be understood to create vicarious liability for a doctor who is off-duty, off-call, and out of town at the time that an on-duty, on-call doctor commits malpractice."  *Id.*  "An off-call doctor may, of course, be *directly* liable for his own negligence, if his leaving to go off-call (or leaving for vacation) at the particular time was itself negligent or if his choice of on-call doctor was negligent."  *Id.*  In the present case, there is no competent record evidence that leaving was itself negligent or that Dr. Austin is somehow liable regarding the choice of the treating physician.

Having said that, it is not apparent that the present motion will impact the evidence presented at trial.  The Court has already excluded Dr. Millikan's late opinions related to the vacation, and both sides agree that Dr. Austin's acts before he left are fair game.  Moreover, the medical history after March 9 is relevant at least as to causation, if not comparative fault. Finally, the jury is entitled to hear and consider the extent to which Dr. Austin communicated with others about Ms. South during his vacation.  Accordingly, it appears to the Court that the vicarious liability issue will not impact the trial and should be addressed on directed verdict or during the charge conference.  As such, the motion for partial summary judgment should be denied, and the issue carried to trial.  *See Kunin v. Feofanov*, 69 F.3d 59, 62 (5th Cir. 1995) (holding that "even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'a better course would be to proceed to a full trial'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56 (1986))).[3]

IV.    Conclusion

The Court has considered all arguments advanced by the parties; those not directly addressed in this Order would not have changed the outcome.  For the reasons explained,

---

[3]This issue will be addressed in greater detail during the December 9, 2016 pretrial conference.

Defendants' motion to strike [76] is granted in part and denied in part, in that portions of Dr.

Millikan's opinions should be stricken as delinquent.  Defendants' motion for partial summary

judgment [69] is denied without prejudice to Defendants' right to raise their arguments at trial.

      **SO ORDERED AND ADJUDGED** this the 2nd day of December, 2016.

                      s/ *Daniel P. Jordan III*
                      UNITED STATES DISTRICT JUDGE