UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KAWANZA SOUTH and LEONARD SOUTH                                PLAINTIFFS

V.                                         CIVIL ACTION NO. 3:15-CV-342-DPJ-FKB

JOSEPH AUSTIN, M.D. and VICKSBURG
WOMEN'S CARE, INC.                                                  DEFENDANTS

ORDER

This wrongful-death, medical-malpractice case is before the Court on the following motions: (1) Defendants' Motion for Judgment as a Matter of Law [125]; (2) Defendants' Third Motion *in Limine* [128]; (3) Plaintiffs' Motion *in Limine* as to Hearsay Statements [131]; (4) Plaintiffs' Motion *in Limine* re Burden of Proof [132]; (5) Defendants' Motion to Exclude Expert Testimony [138]; and (6) Plaintiffs' Motion to Strike Defendants' Motion to Exclude [147]. The Court rules as follows:

I.      Background

On March 7, 2013, Sheila South was admitted to the River Region Medical Center for a transvaginal hysterectomy and left salpingo-oophorectomy. Defendant Dr. Joseph Austin, M.D., performed the procedures. Ms. South's condition deteriorated after the surgery, and she ultimately died on March 20, 2013. The case was tried January 23 through 26, 2017, but the jury could not reach a verdict and a mistrial was declared.

II.      Motions

        A.      Motion for Judgment as a Matter of Law [125]

               1.      Standard

"Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable

jury to find for that party on that issue.'" *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149 (2000) (citing Fed. R. Civ. P. 50(a)) (other citations omitted). Under Rule 50(b), a party may renew its Rule 50(a) motion post trial.

> [When] entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. . . . Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.

*Reeves*, 530 U.S. at 150–51 (internal citations omitted). If the movant meets these standards, the court may then "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b). In this case, there was no verdict, so there will be a new trial unless the Court grants Defendants' motion for judgment as a matter of law.[1]

2. Analysis

Defendants base their Rule 50(b) motion on defects they see in Plaintiffs' expert witness Dr. Tameka Johnson. They also say that the negligence of other caregivers constituted an intervening and superseding cause. For the reasons that follow, the motion will be denied.

a. Dr. Tameka Johnson

During trial, Plaintiffs' expert witness testified that Dr. Austin breached the standard of care. Defendants now contend that the testimony was unreliable and failed to establish the essential elements of a medical-malpractice claim. Those elements include:

---

[1] Rule 50(b) allows a renewed motion for judgment as a matter of law, which presupposes an original motion under Rule 50(a). In this case, a number of the arguments Defendants now raise were not specifically preserved in their Rule 50(a) motion at trial. But Plaintiffs have not called them on it and therefore waived the potential waiver arguments. *See Wallace v. McGlothan*, 606 F.3d 410, 418–19 (7th Cir. 2010) (holding that plaintiff waived the Rule 50(b) waiver argument).

2

> (1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant's breach of duty was a proximate cause of the plaintiff's injury, and; (4) the plaintiff was injured as a result.

*McGee v. River Region Med. Ctr.*, 59 So. 3d 575, 578 (Miss. 2011) (citations omitted).

There is no dispute that after surgery, Ms. South developed internal hemorrhaging in her abdomen. She therefore received blood transfusions, which caused her vital signs to improve, at least for a while. Though Dr. Austin performed the surgery on March 7, he left the hospital that night, worked the next day, and then went off duty at 5 p.m. on March 8. He left town the next morning for vacation and did not return until after Ms. South's condition was hopeless. There is no suggestion that Dr. Austin was negligent in leaving town. The question is whether he should have taken additional steps while he was on duty before his departure.

According to Plaintiffs' expert witness Dr. Tameka Johnson, the standard of care required a return to the operating room to control the bleed or alternatively a CT scan to determine the scope and location of the bleed and set a baseline for monitoring it. Dr. Johnson further opined that the failure to take these steps before Dr. Austin departed breached the standard of care and contributed to proximately cause Ms. South's death. Johnson Tr. [126-1] at 31, 38.

Defendants dispute these core opinions, Defs.' Mot. [125] at 3, and offer their own extensive account of what they believe really happened. *See*, *e.g.*, Defs.' Mem. [126] at 2, 6–9. In some respects, their account is compelling and would make a strong closing argument. But it also weighs the evidence in ways Rule 50(b) prohibits. As

3

noted, the Court must "disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151.

As just one example of an argument that weighs the evidence, Defendants say "Dr. Johnson had to admit that every one of the[ ] conditions [that caused death] arose after Dr. Austin left on vacation, and he had no reason to anticipate any of them in a patient who was hemodynamically stable when he left town." Defs.' Mem. [126] at 6 (citing Johnson Tr. [126-1] at 62). But the lines Defendants cite from the trial transcript say nothing about foreseeability, and Dr. Johnson had previously explained how the conditions Ms. South suffered after Dr. Austin's departure related to conditions known before he left—which is why she says Dr. Austin should have taken a CT scan or performed exploratory surgery before leaving. Johnson Tr. [126-1] at 20, 23–24, 29, and 31.

Aside from their weight-based arguments, Defendants also contend that Dr. Johnson's testimony is insufficient as a matter law because (1) her opinions fell short of the standards under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); and (2) she opined that the salient decision amounted to a "judgment call."

Starting with Rule 702, Defendants say the opinions are unreliable and must be disregarded. Defs.' Mem. [126] at 11. But the cases they cite arose under Rule 56 where the expert's testimony was actually contested. *See, e.g.*, *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000) (affirming summary judgment).

This case is different because Defendants are making backdoor *Daubert* objections under Rule 50(b). Before trial, Defendants filed no objections to the sufficiency of Dr. Johnson's

4

expert report as required by Local Rule 26(a)(3).[2] And they further failed to file pretrial *Daubert* motions regarding Dr. Johnson's qualifications, methodology, or the reliability of her opinions. Even at trial, Defendants accepted Dr. Johnson as an expert and made no relevant contemporaneous objections regarding her testimony.

The Fifth Circuit faced an analogous issue in *S.E.C. v. Snyder*, where the defendant sought judgment as a matter of law based on "belated attempts to challenge the admissibility of [the expert's] opinions." 292 F. App'x 391, 400 n.1 (5th Cir. 2008). In an unpublished opinion, the Fifth Circuit held:

> Because Snyder did not object to the admissibility of Hoffman's testimony concerning the accounting practices at issue, that issue has been forfeited. . . . Nonetheless, this court looks to the basis of the expert's opinion, and not the bare opinion alone, to determine whether there is legally sufficient evidence to support a jury verdict. . . . Our review of expert testimony for sufficiency of the evidence *is not as rigorous as it would be under a properly preserved challenge* to the admissibility of the testimony under *Daubert*.

*Id.* (emphasis added) (internal citations and quotation marks omitted); *see also Estate of LaFarge ex rel. Blizzard v. Kyker*, No. 1:08CV185, 2011 WL 6151595, at *2–3 (N.D. Miss. Dec. 12, 2011) (applying *Snyder* under Rule 50(b)).

Defendants' arguments here highlight why a timely objection was necessary. Had they challenged Dr. Johnson's opinions when first presented in her report, or offered a contemporaneous objection at trial, Dr. Johnson may have had more to say. In fact, Defendants argue in another motion that once an expert's opinions are challenged in this way, he or she must then come forward with additional support for the opinions. Defs.' Mem. [151] at 3 (citing *Hill v. Mills*, 26 So. 3d 322, 332 (Miss. 2010) ("when an expert . . . renders an opinion that is attacked as not

---

[2] The rule states: "Challenges as to inadequate disclosure of expert witness(es) must be made no later than thirty days before the discovery deadline or will be deemed waived." L. U. Civ. R. 26(a)(3).

5

accepted within the scientific community, the party offering that expert's opinion must, at a minimum, present the trial judge with some evidence indicating that the offered opinion has some degree of acceptance and support within the scientific community"). Defendants never gave Dr. Johnson that opportunity.

Similar concerns have led other district courts to "reject[ ] post trial evidentiary challenges to an expert's methodology, even when characterized as a challenge to the sufficiency of the evidence, on the basis that the failure to object prior to the admission of the evidence deprived the proponent of the opportunity to offer additional foundation for the reliability of the expert's methodology." *Braun Elevator Co. v. Thyssenkrupp Elevator Corp.*, 379 F. Supp. 2d 993, 1001 (W.D. Wis. 2005) (citations omitted). Because Defendants waived the admissibility arguments, the question is whether the evidence was otherwise sufficient.

As to sufficiency, Defendants primarily attack Dr. Johnson's opinion that the bleed led to sepsis—the condition Defendants believe was the sole cause of death. *See* Defs.' Reply [135] at 12. But again, the Court cannot weigh the evidence under Rule 50(b), and it is not clear from the record that sepsis alone caused death as opposed to a cascade of events starting with the post-operative hemorrhage.

For starters, the Death Certificate Dr. Austin himself completed and signed stated that the cause of death was cardiac arrest "as a consequence of renal failure, due to as a consequence of postoperative hemorrhage." Trial Ex. [P-4]. During trial, Dr. Austin—testifying as an expert on his own behalf—backed away from this initial assessment, stating that he was upset and confused when he filled out the certificate. As for the sepsis, Dr. Austin testified that Ms. South "began to have pulmonary complications that resulted unfortunately in her being placed on a[ ] ventilator and led to an overwhelming sepsis, most likely from a pulmonary infection that unfortunately led to her death." Defs.' Rebuttal [150-2] at 222. Dr. Austin's theory could be

6

correct, and the jury was free to accept that explanation. It was not, however, required to accept it.

In addition to the Death Certificate, Plaintiffs' causation argument finds more support in Dr. Johnson's testimony. Even assuming Dr. Austin's expert testimony was correct that the sepsis was related to "pulmonary complications," Dr. Johnson linked those complications (along with renal complications) to the internal hemorrhaging. According to her, the failure to manage the post-operative internal bleeding caused Ms. South's body to vasoconstrict, meaning it cut off blood flow to her kidneys and other organs. Johnson Tr. [126-1] at 18. As a result, the patient suffered "[r]enal insufficiency, respiratory failure, hepatic failure, hypovolemic shock, sepsis, and death." *Id.* at 29. Dr. Johnson further explained,

> The patient hemorrhaged on March 7th. That hemorrhage caused her kidneys to go into acute failure because she shut off the blood flow. That hemorrhage caused her to require large amounts of blood, large amounts of fluid, which basically overloaded her lungs. That is what caused her pulmonary edema. That [ ] pulmonary edema is what led to respiratory distress or the respiratory failure. The blood that accumulated in her abdomen and her pelvis led to the overwhelming sepsis, which basically in a patient that's already diabetic, it's downhill from that point.

*Id.* at 31. This was not a bare opinion; Dr. Johnson explained—without objection—why from a physiological standpoint the bleed led to these other complications. Her testimony was no less supported than Dr. Austin's expert opinion regarding the source of the sepsis.

Based on Dr. Johnson's testimony and the Death Certificate Dr. Austin himself completed and signed, a reasonable jury could conclude that sepsis was not the sole cause of death or that it was in any event causally related to the failure to control the internal bleeding. Again, Dr. Johnson's testimony was received without objection, she explained her theories, and other evidence supported them. This was not the situation addressed in cases like *Guile v. United States*, where the Fifth Circuit concluded that the experts

7

"unexplained, conclusory statements" coupled with contradictions and factual errors offered no substantive evidence. 422 F.3d 221, 227–28 (5th Cir. 2005). The Court finds that the evidence was sufficient under Rule 50(b).[3]

Defendants also challenge Dr. Johnson's opinions because she agreed on cross examination that taking a CT amounted to nothing more than a "judgment call." Defs.' Mem. [126] at 4 (citing Johnson Tr. [126-1] at 71). According to them, choosing between two viable options comports with the standard of care. Even assuming that is true, Dr. Johnson's testimony was not as clear as Defendants hope. In context, Dr. Johnson first agreed that additional surgery could pose other risks. Johnson Tr. [126-1] at 70. Counsel then asked whether she would advise "cut[ting patients] open" if they respond to resuscitation, and Dr. Johnson replied, "If the patient responds to resuscitation in an appropriate manner and you question whether or not she truly bled, CT scan to see how much blood is in her abdomen." *Id.* at 71. She then described this scenario as a "judgment call." *Id.*

It is not apparent from these questions and answers whether Dr. Johnson was saying the choice to conduct a CT *vel non* was a judgment call or whether the choice between performing surgery or taking a CT was a judgment call. *Id.* Moreover, the context of her testimony suggests that this hypothetical did not reflect the circumstances Dr. Austin faced because he knew there was a bleed. *Id.* at 70 (testifying that Dr. Austin

---

[3] The trial record is fairly technical, and this order is not intended to be an exhaustive review. In fact, there was other evidence relating the bleed to the sepsis. For example, when Dr. Austin returned to Vicksburg, he again saw Ms. South and noted "moderate fluid collection in pelvis, could be source of sepsis . . ." Trial Ex. [P-1]. Defendants write this off as a "differential diagnosis," but the evidence was presented for the jury to weigh.

noted a post-operative bleed). Dr. Johnson also testified that failing to perform a CT scan to establish a baseline for the amount of blood in Ms. South's abdomen breached the standard of care. *Id.* at 80. In any event, Dr. Johnson testified repeatedly that the failure to either obtain a CT scan or operate breached the standard of care for reasons she explained in her testimony. The Court understands Defendants' argument, but accepting it would weigh the evidence, something Rule 50 precludes. This portion of the motion is denied.

B. Intervening and Superseding Cause

Defendants alternatively say that judgment should be entered because other caregivers made mistakes after Dr. Austin left town. The question is whether that defense has been established as a matter of law.

Mississippi law on intervening and superseding cause is well established. "Under this theory, an original actor's negligence may be superceded by a subsequent actor's negligence, if the subsequent negligence was unforeseeable." *Entrican v. Ming*, 962 So. 2d 28, 35–36 (Miss. 2007) (citing *Southland Mgmt. Co.,* 730 So. 2d 43, 46 (Miss. 1998). "[N]egligence which merely furnished the condition or occasion upon which injuries are received, but does not put in motion the agency by or through which the injuries are inflicted, is not the proximate cause thereof." *Id.* (citing *Robison v. McDowell,* 247 So. 2d 686, 688 (Miss. 1971). Significantly, "[t]he question of superseding intervening cause is so inextricably tied to causation, it is difficult to imagine a circumstance where such issue would not be one for the trier of fact." *Id.* at 36 (quoting *O'Cain v. Harvey Freeman & Sons, Inc.,* 603 So. 2d 824, 830 (Miss. 1991)).

Here, the Court instructed the jury on this aspect of causation, but other than that, the issue was barely addressed at trial. There was no real evidence—much less expert testimony—

9

establishing breach, proximate cause, or foreseeability as to the other healthcare providers. *See Handy v. Madison Cty. Nursing Home*, 192 So. 3d 1005, 1009 (Miss. 2016) (holding that expert testimony is generally required in medical-malpractice context). When the evidence is viewed in a light most favorable to the nonmovants, there exists a "legally sufficient evidentiary basis" for a reasonable jury to find for Plaintiffs on this lightly pursued causation argument. Fed. R. Civ. P. 50(a). The Rule 50(b) motion is denied.

B. Defendants' Third Motion in Limine [128]

Defendants' Third Motion in Limine seeks an order that would (1) permit Dr. Austin to testify regarding his discussion with a consulting radiologist, Dr. Guillermo Tanaka, about CT imaging for Ms. South; (2) bar any testimony or statements that the agents or staff of Vicksburg Women's Care, Inc., were negligent or caused the death of the patient; and (3) preclude any evidence regarding the business relationship between Dr. Austin and Dr. Connell.

The Motion also sought an order precluding any opinions or other testimony by Plaintiffs' expert, Dr. Johnson, regarding the need to take CT scans of the patient and what the scans might have revealed. In the interest of clarity, the Court will address that issue when it takes up Defendants' *Daubert* Motion [138] and Plaintiffs' Motion to Strike [147].

1. Discussions with Dr. Guillermo Tanaka

Both parties seek an *in limine* ruling on the admissibility of out-of-court statements Dr. Tanaka allegedly made to Dr. Austin. Those statements apparently occurred after Dr. Austin returned from vacation. By then, Ms. South had developed overwhelming sepsis, so Dr. Austin attempted to isolate the source. As part of that effort, he apparently spoke with Dr. Tanaka about a CT scan performed March 19. Dr. Austin described the conversation during the first trial as follows: "I spoke with Dr. Tanaka about obtaining a sample of that fluid [in her pelvis]. His

10

advice was to look elsewhere because there was no radiologic findings on that CT scan to indicate that there was infection in the abdominal cavity." Defs.' Rebuttal. [150-2] at 221. Dr. South then opined that the sepsis that took Ms. South's life was not from the bleed in her abdomen. *Id.* at 221–22.

The first question is whether this statement is hearsay, and if so, whether it meets the exception to hearsay found in Federal Rule of Evidence 803(4). Defendants primary argument is that the out-of-court statements will not be offered for the truth of the matter asserted—*i.e.*, that the CT scan did not suggest sepsis in the blood pooled in Ms. South's pelvis. Defendants repeatedly say that

> Dr. Austin is not offering Dr. Tanaka's statements to prove that Dr. Tanka's [sic] statements were correct or incorrect . . . , but to establish that the statements were made to Dr. Austin, and Dr. Austin relied on those statements to determine a course of action for providing Ms. South with medical care.

Defs.' Reply [143] at 3; *see also id.* at 2, 4; Defs.' Rebuttal [150] at 4. The problem is that the conversation with Dr. Tanaka occurred after Dr. Austin returned from vacation, and there are no claims related to his actions during that time frame. In other words, Dr. Austin need not defend his "course of action" at that point. Defs.' Reply [143] at 2–4. The Court is not, therefore, persuaded that the statement is being offered for a reason other than its truth.

Regarding hearsay exceptions, Rule 803(4) removes the hearsay stigma from an out-of-court statement that "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4). But Plaintiffs argue that unlike this case, "these exceptions are appropriate where the declarant is the patient or the patient's surrogate." Pls.' Mem. [142] at 4–5 (collecting cases). Defendants filed two follow-up briefs on this issue, neither of which challenged Plaintiffs' argument that Rule 803(4) is inapplicable. *See*

11

Defs.' Reply [143] at 2–5; Defs.' Rebuttal [150] at 1–4. The Court concludes that the hearsay statement does not satisfy Rule 803(4).

The final question is whether the statement is admissible under Federal Rule of Evidence 703, given that Dr. Austin testified as an expert. The rule states:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

Plaintiffs never substantively challenge Defendants' Rule 703 argument, saying instead that Dr. Austin failed to disclose the conversation with Dr. Tanaka as a basis for his opinions and further failed to disclose any opinion that there was no sepsis detected in the CT scan of the abdominal bleed. Pls.' Resp. [142] at 2. Defendants demur, saying Dr. Austin addressed all of that in his expert report and deposition testimony. But the report does not fully support their argument, and Defendants never provided the deposition transcript, much less a citation to it.

On this record, the Court cannot say whether an adequate disclosure occurred. As discussed later, the Court has likewise concluded that it needs a *Daubert* hearing on the reliability of Dr. Johnson's opinions, so the two issues can be taken up at the same time. When the time comes, the parties should expect to address asserted deficiencies in Dr. Austin and Dr. Johnson's reports in light of the Fifth Circuit's approach to such challenges. *See, e.g.*, *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004) ("The Court reviews the trial court's exercise of its discretion to exclude experts not properly designated by

considering four factors: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice.").

### 2. Negligence of Others

Defendants say Plaintiffs should be precluded from stating that agents/staff of the Vicksburg Women's Care Inc., breached the standard of care. *See* Defs.' Mem. [129] at 10. Plaintiffs do not seem to oppose this request, so it is granted.

### 3. The Business Relationship Between Dr. Austin and Dr. Connell

During the trial, Dr. Johnson referred to Dr. Austin and Dr. Connell as "partner[s]." Johnson Tr. at 45. Defendants seek to preclude any similar statements in the new trial. *See* Defs.' Mem. [129] at 12. Plaintiffs' response is a bit hard to follow. They say Defendants' argument is without merit because they did not solicit the disputed testimony, which was harmless in any event. *See* Pls.' Mem. [142] at 12. Plaintiffs have not, however, explained why this portion of the Motion *in limine* should be denied, so it is granted.

C. Plaintiffs' Motion *in Limine* re Burden of Proof [132]

Twice during the first trial, defense counsel misstated the preponderance of evidence standard when addressing the jury. He did so during *voir dire* and in closing (though the former was not transcribed). Plaintiffs now move *in limine* to prevent this from happening again. For their part, Defendants concede the point while maintaining that it is proper to argue the legal standard.

To be clear, the Court has no rule against making arguments related to the burden of proof. But parties may not contradict the Court's instructions or misinform the jury. Here, defense counsel used an evidentiary-scales analogy, saying that a slight tipping of the scales

13

would not meet Plaintiffs' burden because "[t]o preponderate . . . means you've got to really tip that down." Defs.' Closing Tr. at 13**.** That description was inaccurate. As stated in the case Defendants now cite in response to this motion, even a "slight[ ]" tipping of the scales satisfies the preponderance standard. *Blossom v. CSX Transp., Inc.*, 13 F.3d 1477, 1479–80 (11th Cir. 1994). The Motion is granted.

        D.        Expert Motions

There are three motions related to Plaintiffs' expert Dr. Temeka Johnson. First, Defendants included in their Third Motion *in Limine* [128] a request to strike her testimony regarding CT scans. Next, Defendants filed a delinquent *Daubert* Motion [138] seeking to exclude her opinions that link the post-operative bleed to sepsis and death. That Motion was supported by an affidavit from Dr. Steven Stogner, an expert not previously disclosed. Finally, Plaintiffs filed a motion titled, "Plaintiffs' Motion to Strike Dr. Steven Stogner's Affidavit [147], but it was docketed as Motion to Strike Defendants' *Daubert* Motion, and they sought that broader relief in the body of their Motion.

In very general terms, Defendants say in their *Daubert* Motion and Third Motion *in Limine* that Dr. Johnson surprised them with new testimony at trial and otherwise offered opinions that are not reliable under Federal Rule of Civil Procedure 702. They therefore seek to exclude Dr. Johnson from the next trial or alternatively ask for a *Daubert* hearing. The Court agrees that a hearing is necessary, but will first address a few side issues.

Starting with Plaintiffs' timeliness/waiver argument, Defendants say they could not meet the pre-trial motion deadlines because Dr. Johnson's new opinions came during trial. Defs.' Resp. [152] at 4. That is not entirely accurate. Regardless, a defendant's failure to file a timely

motion challenging an expert "cannot alter the evidentiary standard for the admission of expert testimony under Rule 702." *Vargas v. Lee*, 317 F.3d 498, 501 n.4 (5th Cir. 2003).

The question now is whether Dr. Johnson's opinions are reliable. And that question is best answered through an evidentiary hearing. For that reason, the Court grants Defendants' alternative request and will take the objections found in Defendants' Third Motion *in Limine* [128] and the Motion to Strike Expert Testimony [147] under advisement until a hearing can be conducted.

Finally, Plaintiffs move to strike Dr. Steven Stogner's affidavit, noting that he was never disclosed as an expert and is otherwise unreliable. Working backwards, Plaintiffs never explain why Dr. Stogner's opinions are unreliable, and they failed to file a reply when Defendants adequately addressed that issue. That portion of the motion is denied. As for the argument that Defendants never designated Dr. Stogner, Defendants say they were under no such duty because he will not testify at trial. Defs.' Resp. [152] at 4. Defendants cite several cases where experts were allowed to testify in this way, yet Plaintiffs offered no reply. And Plaintiffs have themselves relied on a non-testifying expert to oppose Defendants' *Daubert* Motion. The Court will therefore allow Dr. Stogner to be heard in conjunction with the *Daubert* hearing.

There are logistical issues that the Court will need to address with the parties before the evidentiary hearing. Accordingly, the parties are instructed to contact the Court's Courtroom Deputy by September 1 to schedule a telephonic conference.

III. Conclusion

The Court has considered all of the arguments; those not addressed would not change the outcome. For the reasons stated, Defendants' Motion for Judgment as a Matter of Law [125] is denied; Defendants' Third Motion *in Limine* [128] is granted in part, denied in part, and taken

15

under advisement in part; Plaintiffs' Motion *in Limine* as to Hearsay Statements [131] is taken under advisement; Plaintiffs' Motion *in Limine* re Burden of Proof [132] is granted; Defendants' Motion to Exclude Expert Testimony [138] is taken under advisement; and Plaintiffs' Motion to Strike Defendants' Motion to Exclude [147] is denied.

**SO ORDERED AND ADJUDGED** this the 28th day of August, 2017.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE